**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| | **HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:** | **Civil Action No. 2:20-cv-3539** |
| ***State of Connecticut, et al. v. Sandoz, Inc., et al*** | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO UNSEAL REDACTED INFORMATION
IN THE PLAINTIFF STATES' COMPLAINT**

Plaintiff State of Connecticut, on behalf of itself, 49 other States and Territories and the District of Columbia (collectively, "Plaintiff States"), respectfully move this Court for an order to unseal the unredacted Complaint filed in the above-captioned matter on June 10, 2020 (the "Unredacted Complaint").

Plaintiff States seek to disclose to the public all of the information in the Unredacted Complaint because it is not commercially or competitively sensitive information traditionally protected from public disclosure.  The allegations in the Complaint describe in great detail a long running conspiracy perpetrated by the Defendants – generic drug manufacturers and their senior executives (collectively, "Defendants") – that has resulted in artificially inflated prices on at least 80 different generic drugs and caused significant financial harm to federal and state healthcare programs, other municipal and local government payers, large and small employers who fund their employee health plans, and individuals who pay out-of-pocket for their prescription generic drugs. By definition, the *anticompetitive* actions of the Defendants are the opposite of "commercially or competitively sensitive," and thus any references to them should be unsealed.

The issues involved in this litigation are matters of paramount public significance that the public has a right to access under both the common law and the First Amendment.  Accordingly, Plaintiff States – as government enforcers and officers of the Court – hereby move to unseal the Unredacted Complaint.

## I.      BACKGROUND AND PROCEDURAL HISTORY

As a result of facts learned during a non-public investigation initiated by the State of Connecticut in July 2014, Plaintiff States publicly filed a redacted Complaint on June 10, 2020 in the U.S. District Court for the District of Connecticut charging the Defendants with entering into contracts, combinations, and conspiracies that had the effect of restraining trade, artificially inflating prices, and reducing competition in the markets for 80 generic drugs.  Plaintiff States allege that this conduct violates federal and state antitrust and consumer protection laws and seek, among other remedies, a permanent injunction to prevent Defendants from continuing their illegal conduct and remedying the anticompetitive effects caused by their illegal conduct, disgorgement of their ill-gotten gains, damages on behalf of various state and governmental entities and consumers, civil penalties, and other equitable relief.

Simultaneous with the public filing of the redacted Complaint, Plaintiff States also filed the Unredacted Complaint along with a Motion to Seal (the "Motion to Seal").  Plaintiff States filed the Motion to Seal only to comply with provisional lodging procedures for antitrust investigative material laid out by the Connecticut Supreme Court in *Brown and Brown, Inc. v. Blumenthal,* 297 Conn. 710, 735–36 (2010).  In accordance with *Brown and Brown*, in the publicly-filed Complaint, Plaintiff States redacted quoted communications and portions of documents obtained through various civil antitrust subpoenas issued under Section 35-42(a) of the Connecticut Antitrust Act (the "CAA").  In doing so, Plaintiff States made no representation that there was any justification for the continued sealing of these materials.  On July 17, 2020, the

Judicial Panel on Multidistrict Litigation (the "JPML") transferred this action to MDL No. 2724. Plaintiff States are now filing this Motion because the law requires that the public have access to the Unredacted Complaint.

This is the third Complaint filed by the Plaintiff States as a result of their ongoing investigation of anticompetitive conduct in the generic drug industry. The two prior Complaints already pending in this MDL – which arise out of the same antitrust investigation that underlies this Complaint and allege similar conduct and charges against some of the same Defendants (the case arising from the first Complaint filed, the "First Action," and the case arising from the second Complaint filed, the "Second Action") – have already been unsealed by this Court.[1]

On September 11, 2020, the States informed the Defendants that they intended to file a Motion to Unseal the Complaint and asked whether the Defendants consented to the filing of such a Motion. To date, the Defendants have not provided any position, including an objection.

II.     **LEGAL ARGUMENT**

      A.     **Connecticut Law Does Not Require Redacted Material to Remain Under Seal After the Attorney General Files a Complaint**

Connecticut filed the Complaint to comply with the provisional lodging procedures the Connecticut Supreme Court laid out in *Brown and Brown*. In *Brown and Brown,* the Connecticut

---

[1] The First Action, 17-cv-3768, was initially filed in the U.S. District Court for the District of Connecticut on December 15, 2016 and, on August 3, 2017, was transferred by the JPML to MDL No. 2724. On February 1, 2019, Plaintiffs in that case, including the Plaintiff States, filed a Motion to Unseal Redacted Information in the States' Consolidated Amended Complaint (16-MD-2724, Doc. No. 842). The Court granted that Motion and ordered that the Consolidated Amended Complaint be unsealed and made public on February 27, 2019. (16-MD-2724, Doc. No. 894). Similarly, the Second Action, 19-cv-2407, was initially filed in the U.S. District Court for the District of Connecticut on May 10, 2019 and, on May 30, 2019, was transferred by the JPML to MDL No. 2724. On June 6, 2019, the State Plaintiffs in that case filed a Motion to Unseal Redacted Information in the Plaintiff States' Complaint (Case 19-cv-2407, Doc No. 2). The Court also granted that Motion and ordered that the Complaint be unsealed and made public on June 21, 2019 (Case 19-cv-2407, Doc No. 48). In both the First and Second Actions, the Complaints were filed in the same manner as the Complaint in this case (*i.e.*, a publicly redacted version and an unredacted version, filed with a Motion to Seal). The information redacted from the publicly-filed Complaints (and later, with respect to the First Action, the Consolidated Amended Complaint) was the same as the type of information redacted from the publicly-filed Complaint here.

Supreme Court considered the extent to which the Connecticut Attorney General could disclose to third parties, in the course of an antitrust investigation, confidential documents and information obtained pursuant to a subpoena issued under Section 35-42 of the CAA.  *Id.* at 713.  Brown and Brown – the recipient of the subpoena – argued that § 35-42 precluded the Attorney General from disclosing such documents or specific information to anyone outside his office, including during witness interviews or depositions conducted in furtherance of the antitrust investigation.  *Id.* at 720–21.  Brown and Brown objected to disclosure because the Attorney General had subpoenaed materials and information "that contained trade secrets and other valuable commercial and financial information."  *Id.* at 716.  The Connecticut Supreme Court shared the same concern, noting that while the legislature had conferred "broad investigatory powers" on the Attorney General, it had also intended to provide "counterbalancing protections to investigatory targets in recognition of the potential sensitivity of internal business information …."  *Id.* at 723.

The Connecticut Supreme Court held, *inter alia*, that the confidentiality protections afforded subpoena recipients under § 35-42 precluded the Attorney General from disclosing materials and information obtained pursuant to a subpoena to persons outside the Office of the Attorney General during the pendency of an antitrust investigation.[2]  *Id.* at 731.

However, *Brown and Brown* also recognized that certain subpoenaed information clearly should be accessible to the public after the Attorney General files a lawsuit, which implicates the public's right of access.  Therefore, as the Court laid out, when the Attorney General institutes an antitrust action and intends to file materials obtained under § 35-42 or to include the substance of such materials within a complaint, the Attorney General should lodge the complaint under seal to allow the trial court an opportunity to determine "whether the materials contain any trade secrets

---

[2] This rule was amended by legislation and now the Attorney General may show the materials to witnesses at depositions during an investigation.  *See* Conn. Gen. Stat. §35-42(i).

4

or other sensitive information, and whether the need to maintain their confidentiality overrides the public's interest in viewing them."  *Id.* at 735–36 (citing *Rosado v. Bridgeport Roman Catholic Diocesan Corp.,* 292 Conn. 1, 35, 46 (2009)).

Here, the Plaintiff States complied with the lodging procedures articulated in *Brown and Brown* and filed, on the public docket, a Complaint that redacts quoted communications and portions of documents obtained through various civil antitrust subpoenas issued to Defendants and other third parties in the course of the antitrust investigation.  The purpose was to provide affected parties – and ultimately this Court – with an opportunity to determine whether the public's right to access outweighs the need for continued sealing.  Now, as set forth more fully below, the Plaintiff States file the instant Motion because there is no justification under Third Circuit or Connecticut law for the continued sealing of these materials.

**B.**      **Third Circuit Law Requires Public Disclosure of the Full Unredacted Complaint**

**1.      The Common Law Public Right of Access Attaches to the Unredacted Complaint**

In the Third Circuit it "is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records."  *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (citing *Littlejohn v. BIC Corporation,* 851 F.2d 673, 677–78 (3d Cir. 1988)).  The public's right of access includes "a pervasive common law right 'to inspect and copy public records and documents, including judicial records and documents.'"  *Id*. (quoting *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993)).  Filing a pleading with the Court "clearly establishes … status" as a judicial record and, accordingly, the common law public right of access attaches to the document.  *Id*. (citing *Enprotech Corp. v. Renda*, 983 F.2d 17, 20 (3d Cir. 1993)).  The Unredacted Complaint, a pleading filed with the Court, is clearly a judicial record subject to the Third Circuit common law public right of access.  *See Bernstein v.*

*Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132 (2d Cir. 2016) (the court was able to "easily conclude" that a complaint is a judicial record subject to the presumption of public access).

### 2.   The Defendants Cannot Show Good Cause to Override the Public Right of Access

Although the common law public right of access is "a recognized and venerated principle," it can be overridden under certain, limited circumstances.  *Cendant Corp.*, 260 F.3d at 194.  In making such a determination, the Third Circuit follows a rigorous "compelling countervailing interests" standard "with the additional requirement of specific findings."  *Id.*  "Good cause [to override the public right of access] is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.  The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).   Further, "[t]he burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order."  *Id.* at 786–87.[3]

The Defendants cannot demonstrate that there is good cause to maintain the redacted information under seal.  In the Unredacted Complaint the Plaintiff States redacted quotes from intracompany and intercompany documents – including e-mails and text messages – that confirm the existence of the anticompetitive agreements at the heart of the Complaint.  It is not enough to overcome the common law right of access that the records may contain materials that are

---

[3] Connecticut law provides a similarly robust common law right of public access.  *See Brown & Brown, Inc.*, 297 Conn. at 735–36 (citing *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 35 (2009)).  Like courts in the Third Circuit, Connecticut courts seek to safeguard the legitimate interest of a target of an antitrust investigation in preserving the confidentiality of its trade secrets, but balance that interest with the public's right of access to judicial documents.  *Id.* (trial court determines "whether the materials contain any trade secrets or other sensitive information, and whether the need to maintain their confidentiality overrides the public's interest in viewing them.")  Further, like courts in the Third Circuit, Connecticut courts modify or vacate sealing orders when "the original basis for the sealing orders no longer exists; … or the interests protected by sealing the information no longer outweigh the public's right to access."  *Rosado*, 292 Conn. 1 at 66.

unflattering or embarrassing to Defendants.  *U.S. v. Criden*, 681 F.2d 919, 922 (3d Cir. 1992).

Further, the type of information redacted in the Complaint is a far cry from trade secret material

that requires confidential protection.  *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,

825 F.3d 299, 308 (6th Cir. 2016) (holding that "financial and negotiating information" about a

price-fixing scheme is "not entitled to protection as a legitimate trade secret"); *Publicker*, 733 F.2d

at 1074 ("the 'sensitive' information at issue here is not the kind of confidential commercial

information that courts have traditionally protected, *e.g.,* trade secrets … It simply involves a

matter of poor management."); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("The potential

harm asserted by the corporate defendants is in disclosure of poor management in the past.  That

is hardly a trade secret.").

Additionally, when a case involves issues of public importance, that fact alone "weigh[s]

against entering or maintaining an order of confidentiality."  *Pansy v. Borough of Stroudsburg*, 23

F.3d 772, 788 (3rd Cir. 1994) (citing *FTC v. Standard Fin. Management Corp*., 830 F.2d 404, 412

(1st Cir. 1987) (applying an elevated threshold for sealing to matters of public concern)).  In this

context, privacy interests are "diminished when the party seeking protection is subject to legitimate

public scrutiny."  *Haber v. Evans*, 268 F. Supp. 2d 507, 511 (E.D. Pa. 2003) (Rufe, J.) (citing and

following *Pansy*'s instruction to weigh "issues important to the public").  Public access to judicial

records is particularly vital where the government is a party and taxpaying members of the public

are among the consumers who are the real parties in interest.  *See United States ex rel Schweizer

v. Océ, N.V.*, 577 F. Supp. 2d 169, 172 (D.D.C. 2008).

Here, the allegations against Defendants are made by State Attorneys General, the chief

law enforcers of their respective States, who are invoking state power, on behalf of 50 States and

Territories and the District of Columbia.  The charges follow a nearly six-year investigation that

has required, and continues to require, a significant commitment of public resources, including, *inter alia*, the issuance of hundreds of investigatory subpoenas and the review of millions of documents, phone records, and countless hours spent developing cooperating witnesses.

Moreover, the issues presented here are unquestionably matters of public concern. They implicate one of our nation's most important and vital markets – the generic drug industry. Plaintiff States allege that the Defendants devised and implemented a long-term scheme to manipulate prices and allocate markets for at least 80 different generic drugs that has resulted in billions of dollars in financial harm to countless government and private payers, taxpayers, and individual consumers. Notably, with respect to the unsealing of the Consolidated Amended Complaint in the First Action, this Court emphasized the significant public interests at stake:

> [t]he public . . . are paying much more for generic drugs, and if that ever is proven to be true, that couldn't be a more public issue. So, why anything is redacted or sealed in this, besides trade secrets and ordinary protective order content, is still a mystery to me, and that will be changing in the future.

*In Re: Generic Pharmaceuticals Pricing Antitrust Litig.*, Case No. 2:16-md-02724 (CMR), January 4, 2019, Tr. of Oral Argument on the Defendants' Mot. For an Order Limiting Extrajudicial Statements at 22:13-19.

As noted earlier, this Court ordered the unsealing of the Consolidated Amended Complaint filed in the First Action and the Complaint filed in the Second Action (both of which contained very similar types of redactions to the Complaint here). Because Defendants can point to no reason why the Court should not do the same with regard to this third Complaint, the Court should grant the Motion to Unseal.

C.      **The First Amendment Supports Public Disclosure of the Unredacted Complaint**

The Third Circuit also recognizes "the right of access to civil trials … as a First Amendment right" and requires that it be "accorded the due process protection that other fundamental rights enjoy." *Publicker*, 733 F.2d at 1070 (citations omitted).  This right is independent of the common law right of access.  *Cendant Corp.*, 260 F.3d at 198 n.13.  However, like the analogous common law right of access, the Constitutional right, while fundamental, is not absolute: "[T]o limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Id.* (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982), and *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (1983)).

In order to limit the public's access, procedural and substantive prongs must be satisfied.  Procedurally, the Court must articulate the countervailing interest it seeks to protect and make specific findings similar to those required to override the common law right of public access.  *Id.* at 1071.  Substantively, "the record must demonstrate 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quoting *Criden*, 648 F.2d at 824).  Importantly, the overriding interest also must be one that courts traditionally protect from disclosure.  *Id.* at 1073.

There is no overriding interest here sufficient to overcome the First Amendment right to public access.  The holding in *Publicker*'s concerning the redaction of hearing transcripts is instructive.  Publicker's asserted interest for redaction was the fact that its subsidiary was "manufacturing scotch without a permit." *Id.* at 1075.  On review, while the Third Circuit vacated the protection order for lack of the requisite findings, it also "point[ed] out that the 'sensitive' information at issue here is not the kind of confidential commercial information that courts have

9

traditionally protected, *e.g.,* trade secrets." *Id*. at 1074 (citing *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 529 F. Supp. 866, 890 & n.42 (E.D. Pa. 1981)).  Rather, "[i]t simply involves a matter of poor management" and the "potential harm ... in disclosure of poor management in the past ... is hardly a trade secret."  *Id*. (citation omitted).  Underscoring the requirement of a proper purpose, the Third Circuit warned that:

> [F]ederal courts should not deny access to trial evidence of a bad business practice …. The presumption of openness plus the policy interest in protecting unsuspecting people from investing in Publicker in light of its bad business practices are not overcome by the proprietary interest of present stockholders in not losing stock value or the interest of upper-level management in escaping embarrassment.

*Id*. at 1074; *see also Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) ("we believe it unlikely that such embarrassment qualifies as irreparable injury in the case of corporate defendants").  Similarly, here, Defendants cannot point to an overriding interest that would overcome the First Amendment's presumption of access.  Accordingly, the Court should grant the Motion to Unseal.

## III.    <u>CONCLUSION</u>

For all the reasons set forth above, Plaintiff States respectfully request that this Court enter the proposed Order authorizing public access to the Unredacted Complaint.

10

Dated:   September 22, 2020                    Respectfully submitted,

                                               PLAINTIFF

                                               WILLIAM TONG
                                               ATTORNEY GENERAL


                              BY:    /s/ Laura J. Martella
                                     W. Joseph Nielsen
                                     Federal Bar No. ct20415
                                     Laura J. Martella
                                     Federal Bar No. ct27380
                                     Christine Miller
                                     Federal Bar No. ct30794
                                     Assistant Attorneys General
                                     165 Capitol Avenue
                                     Hartford, CT  06106
                                     Tel: (860) 808-5040
                                     Fax: (860) 808-5033
                                     Joseph.Nielsen@ct.gov
                                     Laura.Martella@ct.gov
                                     Christine.Miller@ct.gov