**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | ∗ | MDL No. 2724 |
| | ∗ | 16-MD-2724 |
| THIS DOCUMENT RELATES TO | ∗ | |
| | | HON. CYNTHIA M. RUFE |
| *The State of Connecticut, et al. v. Sandoz, Inc., et al.* | ∗ | |
| | | Civil Action No.: 20-cv-03539-CMR |

∗ ∗ ∗ ∗ ∗ ∗ ∗ ∗ ∗ ∗ ∗ ∗ ∗

**STATES' SUR-REPLY IN OPPOSITION TO
DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS'
FEDERAL-LAW CLAIMS FOR LACK OF STANDING**

# TABLE OF CONTENTS

Page

ARGUMENT ..................................................................................................................1

I. THIS COURT HAS AUTHORITY TO ORDER EQUITABLE MONETARY RELIEF. .........................1

    A. SECTION 16 ENABLES THIS AUTHORITY. ..............................................................1

    B. CONTROLLING PRECEDENT PROVIDES THIS AUTHORITY UNDER SECTION 16. ..........3

II. *ILLINOIS BRICK* IS NO BAR TO DISGORGEMENT. ...................................................7

III. STATES ADEQUATELY ASSERTED THEIR *PARENS PATRIAE* STANDING. ...............8

    A. STATES HAVE *PARENS* STANDING TO SEEK EQUITABLE MONETARY RELIEF. ............8

    B. STATES' *PARENS* STANDING TO SEEK EQUITABLE MONETARY RELIEF DOES NOT RISK DUPLICATIVE RECOVERIES. ...............................................................9

CONCLUSION ..............................................................................................................10

CERTIFICATE OF SERVICE ........................................................................................12

# TABLE OF AUTHORITIES
Page

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982) ................................................................................................8

*AMG Capital Mgmt., LLC v. FTC*,
141 S.Ct. 1341 (2021) ......................................................................................4, 5, 7

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ................................................................................................9

*Broselow v. Fisher*,
319 F.3d 605 (3d Cir. 2003) ...................................................................................8

*California v. Am. Stores Co.*,
495 U.S. 271, (1990) ......................................................................................1, 2, 3

*Com. of Pa. v. Budget Fuel Co., Inc.*,
122 F.R.D. 184 (E.D. Pa. 1988) .............................................................................9

*FTC v. AbbVie,*
976 F.3d 327 (3d. Cir. 2020) ..................................................................................6

*FTC v. Bronson Partners, LLC*,
654 F.3d 359 (2d Cir. 2011) ...................................................................................3

*FTC, et al. v. Vyera Pharm., LLC*,
20CV00706 (DLC), 2021 WL 4392481 (S.D.N.Y. Sept. 24, 2021) .....................10

*Hawaii v. Standard Oil of Cal.*,
405 U.S. 251 (1972) ................................................................................................9

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977) ............................................................................................7, 8

*In re Generic Pharm. Pricing Antitrust Litig.*,
368 F. Supp. 3d 814 (E.D. Pa. 2019) ......................................................................8

*In re Warfarin Sodium Antitrust Litigation*,
214 F.3d 395 (3d Cir. 2000) ...................................................................................8

*Missouri ex rel. Koster v. Harris*,
847 F.3d 646 (9th Cir. 2017) ..................................................................................9

*New York v. Facebook, Inc.*,
 549 F. Supp. 3d 6 (D.D.C. 2021) ...................................................................................9

*Porter v. Warner Holding Co.*,
 328 U.S. 395 (1946) ............................................................................................ 3, 4, 5, 6

*SEC v. Fischbach Corp.*,
 133 F.3d 170 (2d Cir.1997) ..............................................................................................3

*United States v. Keyspan Corp.*,
 763 F. Supp. 2d 633 (S.D.N.Y. 2011) ..............................................................................2

*United States v. Lane Labs-USA Inc.*,
 427 F.3d 219 (3d Cir. 2005) ................................................................................... 1, 5, 6

*United States v. Rx Depot, Inc.*,
 438 F.3d 1052 (10th Cir. 2006) .......................................................................................4

*W. Virginia ex rel. McGraw v. Comcast Corp.*,
 705 F. Supp. 2d 441 (E.D. Pa. 2010) ...............................................................................8

*Wallach v. Eaton Corp.*,
 837 F.3d 356 (3d Cir. 2016) ............................................................................................7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
 395 U.S. 100 (1969) .........................................................................................................2

## INTRODUCTION

The States have *parens patriae* standing to protect their general economies and their citizens from widespread harm, including the harms caused by Defendants. Section 16 of the Clayton Act (Section 16) allows States to sue for and have injunctive relief against threatened loss or damage by a violation of the antitrust laws. The States have alleged threatened harm persists to satisfy standing to seek equitable relief under Section 16. A court sitting in equity can impose the full breadth of equitable remedies, including disgorgement of illegally obtained profits. Disgorgement can be used prospectively to deter future violations as an appropriate means to prevent that harm. Disgorgement furthers the purpose of the antitrust laws -- protecting consumers from anti-competitive conduct in the marketplace -- by requiring violators to disgorge the fruits of their unlawful conduct. *Illinois Brick* does not limit a court from ordering disgorgement of ill-gotten gains in its exercise of equitable jurisdiction. Defendants' arguments to the contrary are wholly inaccurate and unsupported by case law. Their Joint Motion to Dismiss Plaintiffs' Federal-Law Claims for Lack of Standing, ECF No. 119, must be denied.

## ARGUMENT

### I. THIS COURT HAS AUTHORITY TO ORDER EQUITABLE MONETARY RELIEF.

#### A. SECTION 16 ENABLES THIS AUTHORITY.

It is well settled that the language of Section 16 does not limit a court's inherent equitable power and "should be construed generously and flexibly pursuant to principles of equity." *California v. Am. Stores Co.*, 495 U.S. 271, 294 (1990). "Whether or not Congress specifically contemplated [disgorgement] under [Section 16], the ability to order this remedy is within the broad equitable power granted to the district courts to further the economic protection purposes of the statute." *United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 229 (3d Cir. 2005).

"Disgorgement comports with established principles of antitrust law." *United States v. Keyspan Corp.*, 763 F. Supp. 2d 633, 642 (S.D.N.Y. 2011).

Defendants cannot overcome *American Stores*. The Supreme Court has said, "§16 'states **no restrictions or exceptions** to the forms of injunctive relief a…plaintiff may seek or that a court may order…[and] the statutory language indicates Congress' intention that **traditional principles of equity govern** the grant of injunctive relief.'" *Am. Stores Co.*, 495 U.S. at 281-82 (citation omitted). Indeed, injunctive relief can take different forms. Injunctive relief under Section 16 can be in the form of divestiture, *American Stores*, or a requirement to withdraw from patent pools, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969). As construed by the Supreme Court, "injunctive relief" is extremely broad.

In *American Stores*, the Supreme Court compared Section 15 to Section 16 of the Clayton Act and concluded that while "§ 16's reference to 'injunctive relief...against threatened loss or damage' differs from § 15's grant of jurisdiction to 'prevent and restrain violations,'...it obviously does not follow that one grant encompasses remedies excluded from the other. *Am. Stores Co.*, 495 U.S. at 281. In Note 7 of *American Stores*, the Supreme Court observed that the language of Section 4 of the Sherman Act and Section 15 of the Clayton Act is similar. The Supreme Court explains: "Thus, § 4 of the Sherman Act, which authorizes equitable relief in actions brought by the United States, was reenacted as § 15 of the Clayton Act, while § 16 filled a gap in the Sherman Act by authorizing equitable relief in private actions." *Am. Stores Co.*, 495 U.S. at 287. Unsurprisingly, a district court found that Section 4 of the Sherman Act did not deny the court its "inherent equitable powers" to award disgorgement. *Keyspan Corp.*, 763 F. Supp. 2d at 642. Given the operative similarities between Section 4 of the Sherman Act and Sections 15 and 16 of the

Clayton Act, it follows that there is likewise no limitation of this Court's "inherent equitable powers" to award disgorgement under Section 16.

Defendants' argument that disgorgement is not available under Section 16 because it is "backward-looking" is equally wrong. Defs. Reply at 3. Courts have long recognized that "*future compliance* may be more definitely assured if one is compelled to restore one's illegal gains." *Porter v. Warner Holding Co.*, 328 U.S. 395, 400 (1946) (emphasis added). An award of disgorgement is prospective equitable relief in that it will serve as a reminder of legal obligations, deter future violations and promote a more honest marketplace. *Kansas v. Nebraska*, 574 U.S. 445, 463 (2015). Furthermore, disgorgement not only "forc[es] the defendant to give up the amount by which he was unjustly enriched," but also deters similar conduct in the future. *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 372 (2d Cir. 2011) ("the primary purpose of disgorgement orders is to deter violations of the [ ] laws by depriving violators of their ill-gotten gains") (quoting *SEC v. Fischbach Corp.,* 133 F.3d 170, 175 (2d Cir. 1997)). In *American Stores*, the Court used Section 16 to remedy a consummated merger because "even if the merger is a *completed violation of law*, the threatened harm to California consumers persists." *Am. Stores Co.,* 495 U.S. at 282. Whether the equitable remedy is divestiture of ill-gotten assets or disgorgement of ill-gotten gains reflects a distinction without a difference. Both deprive violator of the fruits of the illegal activity and deter threatened harm.

In accord with *American Stores,* the States have alleged that "threatened harm" by a violation of the antitrust laws "persists" and that disgorgement is an "appropriate means of preventing that harm." *Am. Stores Co.*, 495 U.S. at 282.

### B. CONTROLLING PRECEDENT PROVIDES THIS AUTHORITY UNDER SECTION 16.

Under longstanding Supreme Court precedent, a district court's equitable jurisdiction is broad and comprehensive. "Unless otherwise provided by statute, *all* inherent equitable powers of

3

the District Court are available for the proper and complete exercise of that jurisdiction." *Porter*, 328 U.S. at 398 (emphasis added). It may not be limited without a clear legislative command. "Unless a statute in so many words, or by a necessary and inescapable inference, restricts [that jurisdiction], the full scope of that jurisdiction is to be recognized and applied." *Id.* The Defendants assert the opposite by taking "injunctive relief" out of context to advance the false narrative it means only an injunction. They claim that a court's equitable powers are limited by the legal and equitable remedies specifically stated in a statute and may include nothing more. That is simply wrong and contrary to case law. For example, in *Porter,* the Court found that the express listing of certain remedies, including damages, in the Emergency Price Control Act (EPCA) of 1942[1] *did not* create a *necessary and inescapable inference* limiting courts' authority to order unenumerated equitable remedies. *United States v. Rx Depot, Inc.*, 438 F.3d 1052, 1059–60 (10th Cir. 2006) (citing *Porter*, 328 U.S. at 402). Further, the grant of general equity jurisdiction is sufficient to enable a court to exercise all traditional equitable powers absent explicit or implicit evidence to the contrary. *Mitchell v. Robert DeMario Jewelry*, 361 U.S. 288, 290–92 (1960).

Defendants can find no safe harbor in *AMG Capital* as there is no divergence between *AMG Capital* and *American Stores*. The Court in *AMG Capital* addressed only the very specific question of whether the Federal Trade Commission (FTC) was precluded from seeking monetary relief directly from the courts before exhausting the administrative process under the FTC Act. *AMG Capital Mgmt., LLC v. FTC*, 141 S.Ct. 1341, 1347 (2021). The States, by contrast, seek

---

[1] The Supreme Court found that a damages provision did not preclude the court from ordering equitable monetary relief where restitution is consistent with and differs from damages, which is awarded under another provision of statute. *Porter*, 328 U.S at 402.

4

disgorgement under the court's equity jurisdiction under Section 16 and specific state laws.[2] Unlike the FTC Act in *AMG Captial,* the "text and statutory structure" of Section 16 contains *no* "inescapable inference restrict[ing] the court's jurisdiction in equity." *AMG Capital*, 141 S.Ct. at 1350 (citing *Porter*, 328 U.S. at 398; *Mitchell*, 361 U.S. at 291).

Fundamentally, the *AMG* Court did not overrule *Porter* or *Mitchell* but further clarified that whether a grant of "injunction" in a statutory scheme provides for *equitable monetary relief* "remains a question of interpretation *in each case.*" *AMG Capital*, 141 S.Ct. at 1350 (emphasis added). Because the equitable monetary relief determination requires a case-by-case analysis, *AMG* is *not* a blanket bar to equitable monetary relief and illustrates that there exists an issue of *material fact* here. Defendants' inference from *AMG Capital*'s reasoning that "the text and structure of the Clayton Act unambiguously limits Section 16 to injunctive relief" and only authorizes monetary relief pursuant to Section 4 and Section 4c, Defs. Reply at n. 4, is not supported by *AMG Capital* or any other case.

Following *Porter*, the Third Circuit has made clear that "a district court sitting in equity may order restitution unless there is an explicit statutory limitation on the district court's equitable jurisdiction and powers." *U.S. v. Lane Labs*, 427 F.3d at 224 (Third Circuit affirms district court's order of restitution requested by the FDA based on the FDCA's statutory language which stated a court has jurisdiction "to restrain violations" of the Act, finding this language undisputedly invoked the court's equitable jurisdiction). The Third Circuit recognized "*Porter* and *Mitchell* as having charted" the straightforward "analytical course" for a district court to follow when determining if restitution [or any other equitable remedy] is available under the court's equitable

---

[2] The States' arguments with regard to specific claims under specific state laws is the subject of a separate motion to dismiss and will not be addressed here.

5

jurisdiction. *Id.* Under the course set forth in *Porter,* (1) a district court may order restitution unless there is a clear statutory limitation on the district court's equitable jurisdiction and powers; and (2) restitution is permitted only where it furthers the purpose of the statute. *Id.* at 225. In affirming the order of restitution, the Third Circuit found that the language of the FDCA properly authorized the court's equitable jurisdiction. *Id.* at 227. Like the FDCA in *Lane Labs*, Section 16 places no clear limitation on this Court's equitable jurisdiction, and disgorgement—confiscating ill-gotten gains from the Defendants—clearly furthers the purpose of the Clayton as well as the Sherman Act, which vests district courts with jurisdiction to prevent and restrain violations of the Sherman Act.

Defendants' reliance on *AbbVie* is misplaced as it actually supports the States. In *AbbVie*, the court followed the same *Porter* two-step analytical course described in *Lane Labs* and found that Section 13(b) of the FTC Act does not empower district courts to order disgorgement. *FTC v. AbbVie,* 976 F.3d 327, 379 (3d. Cir. 2020). The court focused on the language of 13(b) and the other multiple instruments the FTC has in its toolbox such as initiating an administrative proceeding to obtain a cease-and-desist order and its ability to sue in federal court for violations of the order for limited monetary remedies and to seek a mandatory injunction and such other and further equitable relief as the court deems appropriate. *Id.* at 374-375. This holding is immaterial to the States because they cannot pursue their case under Section 13(b) and do not have an administrative toolbox with multiple tools. Rather, the States' standing rests in Section 16 and they rely upon the court to provide full complete relief.

The Supreme Court has previously resolved the scope of "injunctive relief" in Section 16 as discussed above. The operative language in Section 16 is unlike that of Section 13(b) and aligns with the relevant language in statutes discussed in *Porter*, *Mitchell* and *Lane Labs*. Section 16 provides that a person is entitled "to sue for and have injunctive relief...against threatened loss or

damage," whereas Section 13(b) provides the FTC may "bring suit...to enjoin...an act or practice." 15 U.S.C. § 53(b).[3] Further, under the antitrust laws, the States are not subject to "elaborate enforcement provisions" such as the Section 5 administrative proceedings under the FTC Act. *AMG Capital*, 141 S.Ct. at 1350.

## II. *ILLINOIS BRICK* IS NO BAR TO DISGORGEMENT.

The antitrust laws permit States to seek both damages as a legal remedy and disgorgement as an equitable remedy. There is no case law rendering these remedies mutually exclusive. There is also no case law holding that any one provision of the antitrust laws is the exclusive means to obtain monetary relief—legal or equitable. The jurisprudence for limiting the recovery of damages under Sections 4 or 4c of the Clayton Act does not control that of obtaining equitable monetary relief under Section 16 because Congress chose to exclude the pivotal "injured in his business or property" language from Section 16. Nonetheless, Defendants now argue that "[s]ection 4 fulfill[s] the traditional purposes of disgorgement" therefore "[t]he form of monetary relief does not matter" in order for *Illinois Brick* to apply. Defs. Reply at 13. Defendants once again conflate damages with equitable monetary relief.  First, *Illinois Brick* is focused on damages, allowing only direct purchasers standing "to bring a lawsuit for *damages*" and does not in any way address standing to seek the remedy of disgorgement. *Wallach v. Eaton Corp.*, 837 F.3d 356, 365 (3d Cir. 2016) (citing *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977)).  Second, disgorgement focuses on the wrongdoer and damages focus on the victim; these are completely distinct concepts. Most importantly, this Court has already decided this issue—*Illinois Brick* does not dispossess a person of "his right to

---

[3] In the context of merger challenges, the FTC seeks a temporary restraining order and preliminary injunction under 13(b) to enjoin a proposed merger pending the outcome of a full trial on the merits before the Commission in an administrative proceeding. States do not have standing under 13(b), and instead rely on Section 16 to seek full and complete equitable relief from the court including temporary, preliminary and permanent injunctions.

7

pursue a common law equitable remedy" i.e., disgorgement. *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 849–50 (E.D. Pa. 2019). The fact that this decision involved state law claims is immaterial because the reason *Illinois Brick* does not apply is because the focus is on the defendant's gain and not the plaintiff's losses, and that is the same for disgorgement. *Id.*

The Defendants' effort to distinguish *In re Warfarin Sodium Antitrust Litigation* fares no better. 214 F.3d 395 (3d Cir. 2000) ("[i]ndirect purchaser status … is not fatal to a plaintiff's request for injunctive relief under section 16 of the Clayton Act."). Notwithstanding the Defendants' claim otherwise, Defs. Reply at 13, this decision did not hinge on the presence or absence of equitable monetary relief. *Id.* at 399. This Circuit's binding precedent does not leave room for doubt; *Illinois Brick* is no bar to the States' standing to seek equitable monetary relief.

### III. STATES ADEQUATELY ASSERTED THEIR *PARENS PATRIAE* STANDING.

#### A. STATES HAVE *PARENS* STANDING TO SEEK EQUITABLE MONETARY RELIEF.

The States have met the requirements for *parens patriae* standing—being the real party in interest and expressing a quasi-sovereign interest. A state is the real party in interest when it brings a claim for injunctive relief, *W. Virginia ex rel. McGraw v. Comcast Corp.,* 705 F. Supp. 2d 441, 447 (E.D. Pa. 2010), and when it has a "quasi-sovereign interest" that stands apart "from the interests of particular private parties." *Broselow v. Fisher,* 319 F.3d 605, 609 (3d Cir. 2003) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982)). A quasi-sovereign interest is the protection of "the health and well-being—both physical and economic—of its residents in general." *Snapp*, 458 U.S. at 697.

Notwithstanding Defendants' Reply at 15-17, there is no specific formula or percent of a state's population that must be affected to perfect *parens* standing. There is no magic number, and there are no "definitive limits on the proportion of the population of the State that must be adversely affected." *Snapp*, 458 U.S. at 607. The only requirement is that the number affected must

8

be "substantial" and "more must be alleged than injury to an identifiable group of individual residents." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017) (citation omitted).

Unlike in *Koster*, where *parens* standing was rejected due to a very limited number of egg farmers being impacted, here, millions of citizens use generic drugs, undoubtedly a "substantial portion" of the States' populations. The States here have clearly asserted those interests, making each State more than a nominal party. The States' *parens* claims are not duplicative of private class claims. And, even if they were, State *parens* claims are superior. *Com. of Pa. v. Budget Fuel Co., Inc.*, 122 F.R.D. 184, 186 (E.D. Pa. 1988). States are concerned about affordable access to generic drugs in a marketplace free of collusion. The States have properly asserted their *parens patriae* standing. *New York v. Facebook, Inc*., 549 F. Supp. 3d 6, 22 (D.D.C. 2021) (the Supreme Court long ago held that a State had *parens patriae* standing to seek an injunction against a price-fixing conspiracy under Section 16 of the Clayton Act (citation omitted)).

### B. STATES' *PARENS* STANDING TO SEEK EQUITABLE MONETARY RELIEF DOES NOT RISK DUPLICATIVE RECOVERIES.

States can bring parallel antitrust enforcement claims even though their residents have brought individual or class claims, notwithstanding Defendants' arguments to the contrary. The enactment of the Hart-Scott-Rodino Act, allowing States to bring *parens patriae* claims for damages, neutralizes Defendants' red herring concerns. Defs. Reply at 14 citing *Hawaii v. Standard Oil of Cal*., 405 U.S. 251, 262-64 (1972). The Court's concern in *Standard Oil*, in which Hawaii brought a damages claim on behalf of its general economy, related to duplicative damages recovery. Duplicative recovery is not a concern with disgorgement claims because States' disgorgement claims focus on ill-gotten gains remaining *after* legal remedies have been awarded. Disgorgement and other equitable remedies are proper when the legal remedy (*i.e.,* damages) is inadequate. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508-09 (1959). Here, the question

9

of adequacy is not yet ripe. At the end of the litigation, the Court will consider appropriate remedies and Defendants will have an opportunity to be heard about concerns of duplicative recoveries. *FTC, et al. v. Vyera Pharm., LLC*, 20CV00706 (DLC), 2021 WL 4392481, at *5 (S.D.N.Y. Sept. 24, 2021) (Vyera's concern is not an impediment to an overlapping award of disgorgement). The only issue currently before this Court relates to the States' *standing* to seek disgorgement; the States have shown they have standing.

## CONCLUSION

The States have adequately asserted standing sufficient to seek the equitable remedies sought under the federal antitrust laws. The Court should deny with prejudice Defendants' Joint Motion to Dismiss Plaintiffs' Federal-Law Claims for Lack of Standing.

Respectfully submitted,

| STATE OF MARYLAND | COMMONWEALTH OF PENNSYLVANIA |
|---|---|
| Brian E. Frosh<br>Maryland Attorney General | Josh Shapiro<br>Pennsylvania Attorney General |
| */s/ Schonette J. Walker*<br>Schonette J. Walker<br>Gary Honick<br>Assistant Attorneys General<br>200 Saint Paul Place, 19th Floor<br>Baltimore, Maryland 21202<br>swalker@oag.state.md.us<br>ghonick@oag.state.md.us<br>(410) 576-6470 | */s/ Joseph S. Betsko*<br>Joseph S. Betsko<br>Senior Deputy Attorney General<br>Tracy W. Wertz<br>Chief Deputy Attorney General<br>Strawberry Square, 14th Floor<br>Harrisburg, PA 17120<br>jbetsko@attorneygeneral.gov<br>twertz@attorneygeneral.gov<br>(717) 787-4530 |

*/s/ Joseph Nielsen*
W. Joseph Nielsen
Assistant Attorney General
State of Connecticut
165 Capitol Avenue
P.O. Box 120
Hartford, Connecticut 06141-0120
joseph.nielsen@ct.gov
(860) 808-5040

Liaison Counsel for the States

## CERTIFICATE OF SERVICE

I, Joseph S. Betsko, hereby certify that the foregoing has been filed electronically using the Court's CM/ECF system, which will serve a copy upon all counsel of record, and is available for viewing and download.

Dated: March 25, 2022          By:       /s/ *Joseph S. Betsko*
                                                    Joseph S. Betsko
                                                    Senior Deputy Attorney General